**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PATIENTRIGHTSADVOCATE.ORG, INC., *Plaintiff,* | |
| v. | Case No. |
| AMERICAN MEDICAL ASSOCIATION, *Defendant.* | |

## **COMPLAINT**

1. PatientRightsAdvocate.org, Inc. (PRA) is a 501(c)(3) nonprofit, non-partisan organization that provides a voice for consumers—patients, employees, employers, and taxpayers—to have competition, transparency, and meaningful choices in healthcare. As part of that mission, PRA strives to provide all participants in the American healthcare system with access to the rules of the road, namely the laws that determine the pricing and billing for their healthcare. PRA brings this action against the American Medical Association (AMA) to clarify that PRA is entitled to make the reference work *Current Procedural Terminology* (*CPT*) freely and openly available to the public.

2. *CPT* plays a critical role in healthcare billing and pricing. *CPT* establishes a comprehensive set of five-digit codes for classifying medical procedures. Federal law *requires* healthcare providers, payers, and physicians to use *CPT* codes in virtually every electronic healthcare transaction. Federal law and at least 45 States also require use of *CPT* when submitting claims for reimbursement under Medicare, Medicaid, and other government programs. Indeed, Medicare directly incorporates *CPT*'s classifications into its reimbursement formula, which in turn influences the rates that private insurers pay. Public access to *CPT* is thus essential to allow patients, employers, policymakers, regulators, and researchers to understand billing and reimbursement procedures for the ever-growing share of the economy that is spent on healthcare.

1

3.     At present, however, the public cannot freely access *CPT* or discuss its content. The AMA, a trade association and lobbying group for physicians, claims *CPT* as its private property. To obtain a physical copy from the AMA, members of the public must pay $137.89. And that's not all. The AMA maintains that copies of *CPT* purchased by the public are for "personal use" only. If any person wants to use, reference, or display *CPT* content, the AMA asserts he must obtain its permission and pay for the privilege.

4.     Officials in every branch of the federal government have objected to the AMA's conduct. In 1997, the Ninth Circuit held that the AMA's copyright in *CPT* was unenforceable because the AMA's conduct amounted to copyright misuse. *Prac. Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 520-21 (9th Cir. 1997), *cert. denied*, 524 U.S. 952 (1998). In 2025, Senator Bill Cassidy of Louisiana accused the AMA of "abus[ing] [its] government-backed monopoly by charging exorbitant fees to anyone using the CPT code set." Letter from Sen. Bill Cassidy to Bobby Mukkamala, President, AMA at 2 (Oct. 6, 2025), perma.cc/HSN4-R9EN (*Cassidy Letter*). And the Centers for Medicare & Medicaid Services (CMS) is currently accepting comments on whether "alternatives exist to CPT-4 for CMS to consider as part of the national coding standard for physician services," given the "longstanding concern expressed over the Federal reliance on a private organization with such an obvious conflict of interest." *CY 2027 Payment Policies Under the Physician Fee Schedule and Other Changes to Part B Payment and Coverage Policies*, 91 Fed. Reg. 43,842, 43,952-53 (Jul. 16, 2026).

5.     The AMA has no right to withhold *CPT* from the public and charge hefty fees for access. The AMA has no valid copyright in *CPT*. Federal and state law expressly incorporate *CPT* by reference, and copyright precedent has long recognized that "no one can own the law." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 (2020) (*PRO*). And even if the AMA's copyright were valid, the public is still entitled to access to *CPT* under well-established principles of fair use and copyright misuse.

6.      PRA therefore brings this declaratory judgment action to clarify that it can make *CPT* freely available to the public at large. In particular, PRA has purchased a 2026 print edition of *CPT*, which—if it prevails in this suit—it intends to scan and post on its website for the public at large to access without charge. But at present, PRA cannot take these next steps without risking a ruinous copyright infringement lawsuit brought by the AMA. PRA thus respectfully requests that this Court grant it the declaratory relief necessary to allow it to pursue its mission of transparency and open public access to healthcare information.

## PARTIES

7.      PRA is a nonprofit 501(c)(3) organization whose core mission is to bring transparency and accountability to the healthcare system to promote a functional, competitive healthcare marketplace. PRA is currently incorporated under Massachusetts law, and its principal place of business is located in Massachusetts, although PRA is in the process of moving its incorporation and operations to Florida.

8.      Defendant AMA is a 501(c)(6) trade association for physicians and medical students. Upon information and belief, Defendant AMA is incorporated under Illinois law, and its principal place of business is located at 330 North Wabash Avenue, Chicago, IL 60611.

9.      The AMA is not a charity. It exists to promote the interests of its members, including through heavy lobbying activity. The AMA reported over $24 million in lobbying and political expenditures in 2024. AMA Form 990, Sched. C, at 3 (2024), perma.cc/QJ8L-8BZ6. It reported total revenue of over $546 million and total net assets of over $1.1 billion. *Id.*, Form 990 at 1.

## JURISDICTION AND VENUE

10.      This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "arise[s] under" federal copyright law and the Declaratory Judgment Act, 28 U.S.C. §2201.

11.      Venue is proper under 28 U.S.C. §1391 because the AMA is headquartered in Chicago.

**FACTS**

**A. *CPT* has been Incorporated into Law for Over Four Decades.**

12. *CPT* "is a set of codes, descriptions, and guidelines intended to describe procedures and services performed by physicians and other qualified health care professionals, or entities." *CPT 2026: Professional Edition*, at xiii (2025) (*CPT 2026*). Each procedure or service is assigned a five-digit code and description. For instance, the code 01730 is assigned the description "Anesthesia for all closed procedures on humerus and elbow." In addition, guidelines define key terms and provide additional guidance for how to code procedures. The codes are principally meant to be used in billing.

13. The AMA published the first edition of *CPT* in 1966. It has since produced three more "editions," with the fourth edition (*CPT-4*) first published in 1977. The AMA publishes a "revision" to *CPT-4* every year, meaning that anyone seeking to use the *CPT* must purchase a new edition every year. Between "August 31 and early September," the AMA publishes the revised code set as an electronic data file. *CPT 2026* at xiii. The codes become available as a physical book "several weeks later." *Id.* The new codes generally have an "effective date" of January 1 of the following year. *Id.* Changes to *CPT* are made by a body called the CPT Editorial Panel. At present, the AMA Board of Trustees selects the Panel's members.

14. The AMA asserts and has registered a copyright in every edition of *CPT* and in every annual revision of *CPT-4*. *See, e.g.*, 2026 Revision Copyright Registration (Ex.A).

15. For over 40 years, federal and state law has adopted *CPT*, requiring its use in most healthcare billing transactions. Federal and state law incorporate *CPT* in three main ways: (1) CMS has adopted it as part of its coding system for Medicare and Medicaid; (2) the Department of Health and Human Services (HHS) has adopted it as part of its HIPAA standards for electronic billing; and (3) state and other federal regulations have incorporated *CPT* by reference in statutes and regulations for reimbursement claims, reporting requirements, and other purposes.

16. ***Medicare and Medicaid.*** Over 144 million Americans—nearly 40% of the population—receives healthcare through Medicare and Medicaid. The Medicare and Medicaid programs have annual expenditures over $2 trillion. For over four decades, CMS has required the use of *CPT* in Medicare and Medicaid reimbursement claims.

17. In 1977, Congress directed the Health Care Financing Administration (HCFA)—CMS's name before 2001—to establish a uniform procedure coding system for the coding of all physicians' services in Medicare and Medicaid claim forms. *See* 42 U.S.C. §1395w-4(c)(5). In response to this mandate, HCFA worked with the AMA to develop the HCFA Common Procedure Coding System (HCPCS).[1] *See Medicaid Management Information System Proposed System Requirements*, 48 Fed. Reg. 16,750, 16,753 (Apr. 19, 1983). HCPCS consists of two "levels" of codes. Level I are the *CPT-4* codes adopted in their entirety. *Id.* Level II are codes developed directly by HCFA (and now CMS) "for some nonphysician services." *Id.*

18. As part of developing HCPCS, HCFA entered into a license agreement with the AMA in 1983. *See* 1983 License Agreement (Ex.B). Under that agreement, "HCFA shall adopt and use CPT-4 in connection with HCPCS" and will not "use any other system of procedure nomenclature in HCPCS for reporting physicians' services." *Id.* §1. HCFA shall also "publicly endorse the use of CPT-4" and "where permitted by HCFA's statutory authority and budgetary constraints, require the use of CPT-4 based HCPCS in programs administered by HCFA." *Id.* §2. In exchange, the AMA conferred on HCFA "a non-exclusive, royalty free, and irrevocable license" to "the most current publicly available CPT-4" to the extent it is used in federal programs. *Id.* §3(a). The Agreement further specifies that "HCPCS shall be prepared in format(s) approved in writing by the AMA which include appropriate notice(s) to indicate that CPT-4 is copyrighted material of the AMA." *Id.* §3(c).

---

[1] Following the redesignation of HCFA as CMS in 2001, HCPCS now stands for Healthcare Common Procedure Coding System. *See Prospective Payment System and Consolidated Billing for Skilled Nursing Facilities—Update*, 66 Fed. Reg. 39,562, 39,562 (July 31, 2001).

19. The Agreement also recognizes that the AMA and HCFA have a "joint interest in maintaining CPT-4," and the Agreement provides that the "AMA shall continue to convene the Editorial Panel which is responsible for maintaining CPT-4." *Id.* §8(a). Changes made by the Panel must take effect within 30 to 180 days, unless HCFA determines that, due to "administrative considerations," there is "good cause" for further delay. *Id.* §8(b). And, at the time the agreement was first signed, HCFA was given the right to nominate at least one of the 10 voting members of the panel. *Id.* §8(c). The HCFA (and then CMS) representative remained a voting member into at least 2018. *See Behind the Scenes: The Making of CPT* (Oct. 1, 2018), perma.cc/GHG2-EDKN. Government nominees from the CMS, CDC, and FDA subsequently became non-voting liaisons, *The purpose of the CPT coding system & the CPT Editorial Panel*, AMA (Apr. 24, 2026) ("*CPT Purpose*"), perma.cc/WZ2V-WGA7. In the AMA's own words, "[t]hese individuals, while not voting, still have significant input into the Panel review process and are able to submit comments like all other Panel participants." *Id.*

20. Finally, the Agreement provides that every year it will be renewed automatically, unless terminated by either party after 90 days' notice. 1983 License Agreement §10. The parties can modify the Agreement at any time by written agreement. *Id.* §11.

21. Following the adoption of the 1983 License Agreement, HCFA began to require the use of *CPT* for both Medicare and Medicaid claims. In 1983, HCFA began to require HCPCS—and thus *CPT*—for Medicare claims. *Medicaid Management Information System Proposed System Requirements*, 48 Fed. Reg. at 16,753; *see also System Requirements*, 50 Fed. Reg. 4,800, 4,805 (Feb. 1, 1985). Two years later, HCFA issued a notice requiring the use of HCPCS in Medicaid reimbursement claims. *Medicaid Management Information System Requirements for Physician and Supplier Services*, 50 Fed. Reg. 40,895, 40,897–98 (Oct. 7, 1985). These requirements remain in place today. *See* 42 C.F.R. §433.112(b)(2); CMS, *State Medicaid Manual* §11300 (rev. 18); *CPT Purpose*.

22. On information and belief, the 1983 License Agreement, with immaterial amendments, remains in effect today. *See* CMS, Pub. No. 100-04, *Medicare Claims Processing Manual* ch. 23, §20.1 (2020), perma.cc/A83T-5JP2. In 1997, the Ninth Circuit held that the AMA's copyright in *CPT* was unenforceable because the License Agreement's requirement that HCFA not "use a competing coding system" amounted to copyright misuse. *Prac. Mgmt.*, 121 F.3d at 520-21. In response, the AMA purported to "renounc[e] its rights" under this provision of the Agreement. Brief for United States 5 n.6, *AMA v. Prac. Mgmt. Info. Corp.*, 524 U.S. 952 (1998) (No. 97-1254). But the existing "agreement" between the AMA and CMS still requires CMS to "adopt and use CPT-4 in connection with HCPCS for the purpose of reporting services under Medicare and Medicaid." *Medicare Claims Processing Manual* ch. 23, §20.1. So the AMA's purported renunciation likely has no practical effect with respect to AMA's efforts to defend and enforce its claimed copyrights in *CPT*.

23. CMS is tasked under federal regulations with establishing and updating the HCPCS Level II codes. 42 C.F.R. §414.40. These alpha-numeric codes are used to "identify products, supplies, and services not included in the CPT codes, such as ambulance services or durable medical equipment." CMS, *Healthcare Common Procedure Coding System (HCPCS)* (Apr. 17, 2026), perma.cc/CV9W-9VU6. CMS publishes the official versions of these alpha-numeric codes for free public download on a quarterly basis. *E.g.*, *HCPCS Quarterly Update*, CMS (Jun. 17, 2026), perma.cc/GN4L-5RJQ.

24. *CPT* codes are also incorporated into the Medicare reimbursement formula for physicians. An essential component of that formula is "the relative value for the service" provided. 42 U.S.C. §1395w-4(b)(6)(A). HCPCS codes (and thus *CPT* codes) are used to define each "service," and CMS assigns a relative value to each HCPCS code. *See* 42 C.F.R. §414.24.

25. The use of *CPT* codes in the Medicare reimbursement formula has great significance for the healthcare industry. By themselves, Medicare expenditures exceed $1.1 trillion per year, making up a large share of healthcare spending in their own right. In addition, private insurers frequently set

7

rates as "a percentage of the amount paid by Medicare for that service." Cong. Budget Office, *The Prices That Commercial Health Insurers and Medicare Pay for Hospitals' and Physicians' Services* 3 (2022), perma.cc/VDQ5-RQTW.

26. ***HIPAA.*** Today, the vast majority of healthcare billing takes place electronically, and the vast majority of electronic healthcare billing is subject to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat 1936. *See* 42 U.S.C. §1320d-4; 45 C.F.R. §162.923(a). HHS regulations implementing HIPAA adopt *CPT*, making compliance with *CPT*'s classification scheme legally mandatory for the vast majority of billing for physician services.

27. HIPAA requires the Secretary of HHS to adopt standards for electronic health transactions that incorporate "code sets" to identify information about the transactions at issue. 42 U.S.C. §1320d-2(c). The Secretary did so in 2000. *Standards for Electronic Transactions*, 65 Fed. Reg. 50,312 (Aug. 17, 2000). As part of those standards, the Secretary "adopt[ed] … as the standard medical data code sets" "*Current Procedural Terminology, Fourth Edition (CPT-4)*, as maintained and distributed by the American Medical Association, for physician services and other health care services." 45 C.F.R. §162.1002(a)(5), (b)(1), (c)(1). Consequently, "for all financial and administrative health care transactions sent electronically, the CPT code set will need to be used." *CPT 2026*, at vi.

28. Failure to use the *CPT* codes where required is punishable by civil penalties of up to $50,000 per violation. *See* 42 U.S.C. §§1320d-4, 1320d-5; 45 C.F.R. §§160.402(a), 162.1000(a).

29. ***Other Federal and State Requirements.*** At least 45 States likewise require by law the use of *CPT* codes via reimbursement regulations, reporting requirements, and other provisions.[2] Of

---

[2] *See* 11 Ark. Code R. §25-125(a)(2); Conn. Agencies Regs. §31-280-3; 16 Del. Admin. Code MED §1.20; 19 Del. Admin. Code §1341-4.0; D.C. Mun. Regs. tit. 7, §126.3; Ga. Comp. R. & Regs. 120-2-8.08(3)(i)2, 120-2-10.03(7), 144-4.08(2); Haw. Code R. §§12-15 Ex.A, 17-1737-51.1(f); Ind. Code §12-15-13-7.2; Iowa Admin. Code r. 441-79.1(249A); 907 Ky. Admin. Regs. 1:038; La. Stat. §46:460.71; 90-351-5 Me. Code R. §1; Md. Code Regs. 14.09.08.05; Mass. Gen. Laws ch. 118E, §62; 23-200 Miss. Code R. §1.13; Mo. Code Regs. tit. 11, §30-12.010(6); Neb. Work. Comp. Ct. R. 26(B)(2)(b); N.H. Code Admin. R. He-W 568.10(b), 577.07(a); N.M. Code R. §11.4.7.8; N.Y. Comp. Codes R. & Regs. tit. 12, §329-1.3; N.C. Gen. Stat. §131E-214.13(d); N.D.

those, at least 15 expressly incorporate *CPT* by reference.[3] New Jersey's Medicaid regulations, for instance, provide that "CPT codes are incorporated herein by reference, as amended and supplemented." N.J. Admin. Code §10:61-3.1(a). This express incorporation makes *CPT* part of the very text of state law.

30. Similarly, federal Department of Labor regulations require the use of *CPT* codes in workers' compensation claims for federal employees. *See* 20 C.F.R. §§10.801, 30.701, 725.708, 725.715.

**B.  The AMA Zealously Guards *CPT* as Its Purported Private Property.**

31. Despite *CPT*'s explicit incorporation into federal and state law, the AMA aggressively claims the right to control the public's ability to access, use, share, and discuss its contents. According to the AMA, "[a]ny entity using CPT content anywhere worldwide must have a license authorizing the use of CPT code set from the AMA or an authorized distributor." *CPT Licensing Frequently Asked Questions (FAQs)*, AMA (July 14, 2026), perma.cc/33Q8-VK4S (*CPT FAQs*).

32. The AMA asserts a copyright in every annual revision of *CPT* and vigorously asserts its purported intellectual property rights. *See CPT 2026*, at iv-v. The current revision is available as a physical codebook and as a variety of digital products created by the AMA. The codebook specifies that "[t]his publication is for personal use only." *Id.* at v; *see also CPT FAQs* ("*CPT Professional Edition*" is "for reference only"). AMA maintains that, "to use the CPT codes in an electronic product" (such as billing software), or "cop[y]" or "transmi[t]" them, one must obtain a license. *CPT Licensing FAQs*;

---

Admin. Code 92-01-02-45.1; Ohio Rev. Code §3901.381; Okla. Admin. Code §§317:30-5-432(a), -614; 34 Pa. Code §126.1; S.D. Admin. R. 20:06:27:03, 67:16:02:16.01; 28 Tex. Admin. Code §134.210; 13-4 Vt. Code R. §§2:40.0021(G), .0022(D); Va. Code §65.2-605; Wash. Admin. Code §§182-550-1350, 296-20-010; W. Va. Code R. §§85-20-9.3, -9.4; Wis. Stat. §632.798; Wis. Admin. Code DWD §80.72; *infra* n.3.

[3] *See* Alaska Admin. Code tit. 7, §160.900(a)(1); Cal. Code Regs. tit. 8, §9789.31(h); tit. 22, §51050; 7 Colo. Code Regs. §§1101-3:18-2(B), :18-3(A)(2); Fla. Admin. Code. r. 69L-7.020(2); Idaho Admin. Code r. 17.01.01.002(03); Ill. Admin. Code tit. 77, §840.20(b)(2)(G); Mich. Admin. Code r. 418.10107(a); Minn. R. 5221.0405(B); Mont. Admin. R. 37.86.101(4), .2002(2); Nev. Admin. Code §428.070(3); N.J. Admin. Code §10:61-3.1(a); Or. Admin. R. 436-009-0004(2); Tenn. Comp. R. & Regs. 0800-02-17-.01(2)(i); Utah Admin. Code R612-300-4(A); Wyo. Admin. Code tit. 053.0021, ch. 9, §1(c)(ii).

*see also CPT 2026*, at v ("No part of this publication may be reproduced, stored in a retrieval system, transmitted, or distributed in any form or by any means, without the prior written permission of the AMA."); *id.* at iv (similar warning).

33.     The Amazon page for the 2026 revision of *CPT-4* warns that "[t]he AMA … takes the copyright protection of its content very seriously and is committed to providing the most effective anti-piracy efforts for its authors and readers." *CPT Professional 2026*, Amazon, perma.cc/P9MF-FV9F (accessed July 28, 2026).

34.     The AMA's standard license agreement for end users (e.g., medical practices that want to use the codes in billing software) charges an up-front annual fee of $82.50, as well as an additional annual fee of $18.50 per user. *Internal End User Agreement: Royalty Rates for 2026 and 2027 Annual Releases of Specified Content*, AMA, perma.cc/9DK6-T8Z3 (archived Aug. 11, 2026). Group health plans must also pay $0.24 per member. *Id.*

35.     In 2025, the AMA reported $296.4 million in revenue from "Books and Digital Content." AMA, *Physicians' Powerful Ally in Patient Care: 2025 Annual Report* 25 (Ex.C). After expenses, this category netted $267.5 million in profit. *Id.* Upon information and belief, licenses and sales of *CPT* represent the overwhelming share of this revenue.

36.     Multiple public officials have criticized how the AMA has used this government-sanctioned monopoly over the *CPT* billing codes. In October 2025, Senator Bill Cassidy of Louisiana sent a public letter to the AMA arguing that it has "abused [its] government-backed monopoly by charging exorbitant fees to anyone using the CPT code set, including doctors, hospitals, health plans, and health IT vendors. These fees inevitably are passed on by CPT users to patients in the form of higher health care costs." *Cassidy Letter* 2. The letter also sought information about the revenue that the AMA derived from the sale and licensing of *CPT*, the association's administrative costs for producing *CPT*, and how the association determines pricing for *CPT*. *Id.* at 2-3.

37. More recently, Congresswoman Diana Harshbarger has questioned whether a recent decision to revisit codes used for reimbursing peripheral nerve stimulation therapy was driven by pressure from "manufacturers of competing technologies that possess a direct commercial interest in the outcome of any reinterpretation of these codes." Matthew Foldi, *Rep. Diana Harshbarger wants increased AMA transparency on CPT billing codes*, Wash. Reporter (Jul. 17, 2026) perma.cc/AV63-QAJ4.

38. CMS also recently sought public comment on the impact of the AMA's monopoly in *CPT* on American healthcare. As part of its July 16, 2026 *Calendar Year 2027 Payment Policies* proposed rule, CMS issued a call for public comment "on a number of areas regarding the influence of the CPT® coding system and AMA process on physician payment policy." *CY 2027 Payment Policies Under the Physician Fee Schedule and Other Changes to Part B Payment and Coverage Policies*, 91 Fed. Reg. at 43,952. The CMS's call for comments noted the "longstanding concern expressed over the Federal reliance on a private organization with such an obvious conflict of interest as providing information on the time and resource requirements to conduct physician services when this information may influence their own payment." *Id.* It sought comments regarding "the harms or challenges associated with AMA's monopoly over CPT-4 licenses for health care entities." *Id.* at 43,952-53. CMS also sought comments on what "alternatives exist to CPT-4 for CMS to consider as part of the national coding standard for physician services" and what "objective alternatives exist, or could be developed, to maintain a more objective process to the current AMA[,] CPT[,] and RUC committee processes." *Id.* at 43,953.

39. Digital products make up an increasing and dominant share of the AMA's publication revenue. The AMA has reported that, in 2024, "[r]oyalties and digital content sales drove a $15.9 million revenue increase, as the market for electronic use of digital coding products continues to expand." AMA, Why We Fight: 2024 Annual Report 18, perma.cc/S88R-E4K8. During the same period, the AMA disclosed that "[c]oding book sales declined $1.7 million in 2024 continuing the move from print products to digital." *Id.*

### C. PRA's Standing to Challenge AMA's Copyright.

40.     Consistent with its mission to bring transparency and accountability to the healthcare system, PRA strongly believes that *CPT* should be publicly available because it constitutes an important part of federal healthcare law and, indeed, has been *incorporated* into federal and state law. As a core part of federal healthcare law that determines how patients are billed for medical procedures, the *CPT* codes and descriptors should be freely and publicly available to help patients, payors, researchers, policymakers, and others understand how healthcare dollars are being spent.

41.     Healthcare is a massive and growing multitrillion-dollar segment of the U.S. economy. But despite healthcare's importance, the way healthcare services are priced and billed is opaque and difficult to understand. PRA believes strongly that arming healthcare consumers and payors—patients, employees, employers, unions, and state and local governments—with more information about billing and pricing will enable them to pursue the best quality care at the lowest possible price and substantially reduce their costs of care and coverage.

42.     In line with that mission, PRA hosts several hospital price tools on its website, allowing members of the public to look up the prices hospitals in different parts of the country charge for procedures, drugs, and other services. *See* PRA, patientrightsadvocate.org (last visited July 28, 2026) ("Hospital Price Tools"). PRA also regularly publishes reports on healthcare pricing. *See, e.g.*, PRA, *Analysis of Prescription Drug Prices in Hospitals* (2026), perma.cc/B2R3-2V3Z; PRA, *Seventh Semi-Annual Hospital Price Transparency Report* (Nov. 2024), perma.cc/QH7U-RWT3. *See generally Reports*, PRA, perma.cc/3PXG-RT9R (last visited July 28, 2026). In preparing this research and these tools, PRA relies heavily on hospitals' disclosures under the federal Price Transparency Rule. *Price Transparency Requirements for Hospitals*, 84 Fed. Reg. 65,524 (Nov. 27, 2019). PRA strongly supported that rule while it was being developed and later helped defend it in court. *See* Brief of PatientRightsAdvocate.org *et al.* as amici curiae, *AHA v. Azar*, 468 F. Supp. 3d 372 (D.D.C. 2020) (No. 1:19-cv-319); Brief of

PatientRightsAdvocate.org *et al.* as amici curiae, *AHA v. Azar*, 983 F.3d 528 (D.C. Cir. 2020) (No. 20-5193), 2020 WL 4922250.

43.     Since 2025, PRA has been advocating to make a copy of the *UB-04 Data Specifications Manual* freely available on its website. Like *CPT*, the *UB-04 Manual* is a critical reference work incorporated into federal and state law whose use is required in the vast majority of medical billing for procedures carried out in hospitals. But the American Hospital Association (AHA) claims a copyright in the *UB-04 Manual*, which it aggressively enforces, preventing the public from accessing the *UB-04 Manual* and understanding the role it plays in healthcare pricing. PRA has sought to make the *UB-04 Manual* freely available to the public and, in doing so, has been sued by AHA in a currently pending case in this District that raises many of the same legal issues as this case. *AHA v. PRA*, No. 1:25-cv-15137 (N.D. Ill. filed Dec. 12, 2025).

44.     PRA is ready, willing, and able to make *CPT* freely available on its website as soon as a court confirms its right to do so. To that end, PRA and its agents have purchased the print edition of the 2026 revision of *CPT*—*CPT 2026: Professional Edition*—from a third-party vendor and is ready, willing, and able to make this document publicly available once a court has declared that doing so would not infringe any enforceable copyrights. If this Court rules in PRA's favor, PRA would scan that document and make it freely available on its website in a searchable and user-friendly form.

45.     PRA and its agents will purchase the 2027 revision of *CPT* as soon as it becomes available from third-party vendors. PRA and its agents will do the same for the 2028 revision and all future annual revisions of *CPT*.

46.     Until this Court has declared its rights, PRA has not and will not use the *CPT 2026: Professional Edition* it purchased to take any step inconsistent with the AMA's asserted copyright. PRA has not scanned or copied this work, displayed it, republished it, or created any derivative work with it.

13

47. When PRA purchased *CPT 2026: Professional Edition*, it did not enter into any license agreement with the AMA that purports to require PRA to acknowledge the validity of any copyrights or refrain from challenging them. PRA did not even purchase *CPT 2026: Professional Edition* directly from the AMA.

48. PRA reasonably apprehends that the AMA would bring a copyright infringement lawsuit and seek significant damages if PRA attempted to make *CPT* freely available to the public. This reasonable fear is based on the AMA's extensive efforts to defend and profit from its putative copyright in *CPT*.

49. The AMA has been zealous in enforcing its purported copyright. *See supra* ¶¶31-34. It has formulated a public, nationwide policy making clear that the AMA "expect[s]" an organization "to obtain [an] appropriate license" if it "uses, references or displays CPT content." *CPT FAQs*. The AMA has thereby imposed a strict licensing regime on the entire healthcare industry. This includes the federal government, whose license agreement strictly limits the extent to which the government can make use of *CPT* or reproduce its content, requires the government to publicize users' need to obtain a license, and requires the AMA to sign off on new editions of HCPCS before it can be issued. *See* 1983 License Agreement §2; *Medicare Claims Processing Manual* ch. 23 §20.7; *American Medical Association Terms and Conditions: Current Procedural Terminology (CPT)* 4, CMS, perma.cc/VH66-FNU6 (archived July 28, 2026).

50. The AMA has also vigorously defended its asserted copyright privileges in court. In *Practice Management v. AMA*, it sought to enjoin the opposing party from distributing *CPT* without its authorization, *see* 121 F.3d at 518, and it fought to defend its right to do so all the way to the Supreme Court, *see* 524 U.S. 952.

51. More recently, the AMA submitted an *amicus* brief in *ASTM v. UpCodes, Inc.*, 172 F.4th 253 (3d Cir. 2026) *(ASTM III),* a case in which a standards-setting organization sought to enjoin a

company from posting its standards that had been incorporated into law for free online. *See* AMA Br., *ASTM v. UpCodes, Inc.*, 172 F.4th 253 (3d Cir. 2026) (No. 24-2965), 2025 WL 418687. The AMA submitted this brief to protect its interest in "the enforceability of AMA's copyright in CPT." *Id.* at 4. It argued at length that, despite *CPT*'s incorporation into law, the AMA's copyright in the work remains valid, and posting *CPT* online is not fair use. *Id.* at 4–5. And it insisted that, without the ability to prevent copying and sharing of *CPT*, the AMA would not have sufficient incentive to continue producing it. *Id.* at 18-20. This brief makes clear that the AMA does not believe PRA has the right to post *CPT* online, would not permit PRA to do so, and would consider PRA's decision to do so a serious threat calling for action.

52.     PRA's previous efforts to negotiate with powerful trade associations in the healthcare industry in order to make important materials public has led to litigation against it. In its effort to make the *UB-04 Manual* freely available, PRA sent a letter to AHA, asking it to confirm PRA's right to do so. *See* Doc.1-4, *AHA v. PRA*, No. 1:25-cv-15137 (N.D. Ill. filed Dec. 12, 2025). AHA (which has a representative on the *CPT* Editorial Panel) never responded to the letter. Instead, it preemptively sued PRA for copyright infringement. The suit seeks damages and attorney's fees from PRA, even though PRA has not copied or published the *UB-04 Manual* or begun creating any derivative work. *See* Compl., Doc.1, at 26, *AHA v. PRA*, No. 1:25-cv-15137 (N.D. Ill. filed Dec. 12, 2025).

53.     PRA thus brings this declaratory judgment action to clarify its right to post *CPT* online without having to risk ruinous monetary damages in a copyright infringement lawsuit if PRA acts before a court clarifies its rights.

## CLAIMS FOR RELIEF

54.     Scanning the physical copy of *CPT* and making it publicly available for free on PRA's website online would not constitute copyright infringement. This is so because (1) *CPT* is not copyrightable, (2) posting *CPT* online is fair use, and (3) the AMA has engaged in copyright misuse.

15

## COUNT I
### Non-copyrightability

55. Plaintiff incorporates and restates all its prior allegations.

56. *CPT* is not copyrightable for three independent reasons: because the AMA exercises delegated lawmaking authority in issuing it, because it is incorporated into law, and because the federal government has jointly authored it in part.

57. The AMA publishes *CPT* while exercising delegated lawmaking authority. *CPT* therefore falls within the public domain.

    a. Under "the government edicts doctrine, officials empowered to speak with the force of law cannot be the authors of—and therefore cannot copyright—the works they create in the course of their official duties." *PRO*, 590 U.S. at 259.

    b. The AMA is empowered to speak with the force of law when it issues *CPT*. *CPT* forms part of CMS's "uniform procedure coding system" for Medicare and Medicaid. 42 U.S.C. §1395w-4(c)(5). Under the AMA's license agreement with CMS, the agency must adopt *CPT*, including whatever revisions the AMA might make, wherever it has statutory authority to do so. *See* 1983 License Agreement §2; *Medicare Claims Processing Manual* ch. 23, §20.1. And CMS has done so by making *CPT* obligatory for Medicare and Medicaid claims. By requiring the government to adopt the AMA's codes, this contract gives the AMA authority to speak with the force of law and thus places it under the government edicts doctrine.

    c. In addition, HIPAA regulations delegate to the AMA authority to alter their requirements. Ordinarily, when a federal agency incorporates a private standard by reference, it must adopt a specific edition of that standard. 1 C.F.R. §51.1(f). If the agency later wants to adopt a newer edition, it must conduct a new rulemaking. *See id.* The HIPAA regulations, by contrast, adopt *CPT* as revised by the AMA on an ongoing basis. 45 C.F.R. §162.1002(a)(5). Whatever changes the AMA makes to *CPT* become mandatory under the HIPAA regulations

on whatever date the AMA specifies. §162.1011. HHS thus has given the AMA the extraordinary power to alter federal law prospectively and unilaterally.

58.     *CPT* also is "not protected under the Copyright Act" because it has been "incorporated by reference into" a "regulation." *Canadian Standards Ass'n v. P.S. Knight Co.*, 112 F.4th 298, 304–05 (5th Cir. 2024).

    a.     Federal HIPAA standards directly "adop[t]" *CPT*. 45 C.F.R. §162.1002(a)(5), (b)(1), (c)(1). CMS has adopted *CPT* as part of its "uniform procedure coding system" for Medicare and Medicaid. 42 U.S.C. §1395w-4(c)(5). And at least 15 States explicitly incorporate *CPT* by reference. *Supra* n.3.

    b.     "Incorporation by reference is a form of legislative shorthand"; its "effect … is the same as if the referenced material were set out verbatim in the referencing" provision. *Artistic Ent. v. City of Warner Robins*, 331 F.3d 1196, 1206 (11th Cir. 2003). These incorporations by reference therefore make *CPT* part of the text of federal and state regulations.

    c.     Having been incorporated into law, *CPT* is an uncopyrightable work of federal and state regulators.  As part of the text of binding regulations, *CPT* is the "work" of government officials with "authority to make … law." *PRO*, 590 U.S. at 266. A work so "incorporated" is "not protected under the Copyright Act." *Canadian Standards*, 112 F.4th at 305; *accord BOCA v. Code Tech., Inc.*, 628 F.2d 730, 734 (1st Cir. 1980).

    d.     Because it is incorporated into the law, *CPT* is a work of federal and state regulators "regardless of who actually draft[ed]" its specific language. *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 799 (5th Cir. 2002) (en banc) (quoting *BOCA*, 628 F.2d at 734). "[A]n incorporated provision 'exists not as any part of the referenced material itself, but rather as a duplicate or clone of the referenced material that has been created within the adopting legislation.'" *Bd. of Trs. of Bakery Drivers Loc. 550 v. Pension Benefit Guar. Corp.*, 136 F.4th 26, 30

17

(2d Cir. 2025). Thus, "as *law*," *CPT* is a distinct work in "the public domain." *Veeck*, 293 F.3d at 793. By adopting the text of *CPT* through the rulemaking process, federal and state regulators have "consciously" made it their own. *Id.* at 799; *accord BOCA*, 628 F.2d at 734. Moreover, HHS revises *CPT* every year for the purpose of incorporating it into law, and the AMA solicited both CMS and HHS to incorporate *CPT* into law.

e.　　Even apart from the issue of authorship, the government edicts doctrine forecloses any attempt to copyright *CPT*. The core "principle" of the government edicts doctrine is that "no one can own the law." *PRO*, 590 U.S. at 265. *CPT* has been incorporated into federal and state regulations, which are "the law" under any conceivable definition. *Canadian Standards*, 112 F.4th at 304. Thus, no one can "own" *CPT* or impose a tax on members of the public who seek to access the law.

f.　　In addition, having been incorporated into law, *CPT* is uncopyrightable under the merger doctrine. When an idea or fact "can be expressed in only limited ways," the author's "expression 'merges' into the idea" or fact "and cannot receive copyright protection." *Design Basics, LLC v. Signature Constr.*, 994 F.3d 879, 889 (7th Cir. 2021). The law can be expressed only one way—through its "text." *Corner Post, Inc. v. Fed. Rsrv.*, 603 U.S. 799, 815 (2024). Thus, *CPT*, as part of the law, cannot be copyrighted. *Veeck*, 293 F.3d at 801.

g.　　If any doubt remains, constitutional avoidance militates against affirming the validity of the AMA's copyrights. *See ASTM v. Public.Resource.Org, Inc. (ASTM I)*, 896 F.3d 437, 447 (D.C. Cir. 2018). Permitting a private party to hold a copyright on the law would violate the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment. *See id.* at 447; *id.* at 458-59 (Katsas, J., concurring).

59.　　Separately, *CPT* is not copyrightable in part because it was jointly authored with the federal government.

18

a. "In a joint work, the joint authors hold undivided interests in a work, despite any differences in each author's contribution." *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994) (citing 17 U.S.C. §201). But copyright protection is "not available for any work of the United States Government." 17 U.S.C. §105(a). So any work jointly authored with the federal government is not copyrightable.

b. From 1983 until at least 2018, if not later, CMS had the right to nominate a voting representative to the *CPT* Editorial Panel. As a voting panel member, CMS's representative had significant input on changes to *CPT* and the same degree of control over *CPT*'s content as every other member. On information and belief, while CMS had a voting representative on the *CPT* Editorial Panel, it proposed specific codes and descriptions that were adopted into *CPT*. CMS's representative thus qualified as a joint author of *CPT*, making *CPT* an uncopyrightable government work. *See Herbert v. United States*, 36 Fed. Cl. 299, 309 (1996).

c. CMS's representative is no longer a *voting* member of the *CPT* Editorial Panel. But, on information and belief, a substantial portion of *CPT* remains unchanged from the time when CMS's representative was a voting member. At a minimum, any portions of the *CPT* that were drafted jointly with federal officials are not copyrightable. *See Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 782 (2d Cir. 1994) ("In the case of a derivative work based on an underlying work that is in the public domain, only the material added to the underlying work is protected by copyright.").

d. Government nominees from the CMS, CDC, and FDA continue to serve as non-voting liaisons to the CPT Editorial Panel. *CPT Purpose*, perma.cc/WZ2V-WGA7. In the AMA's own words, "[t]hese individuals, while not voting, still have significant input into the Panel review process and are able to submit comments like all other Panel participants." *Id.* On information and belief, they continue to propose revisions to *CPT*'s text that have been

19

adopted by the full Panel. *See CPT 2026*, at vi (thanking the CMS, CDC, and FDA representatives for their "contributions").

## COUNT II
### Fair Use

60. Plaintiff incorporates and restates all its prior allegations.

61. Even if the AMA holds valid copyrights, releasing *CPT* to the public is fair use. As courts have uniformly recognized, the "non-commercial dissemination" of "technical standards for an industry," "as incorporated by reference into law, constitutes fair use." *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1265 (D.C. Cir. 2023) (*ASTM II*); *accord ASTM III*, 172 F.4th at 271; *Facility Guidelines Inst. v. UpCodes, Inc.*, 677 F. Supp. 3d 955, 973 (E.D. Mo. 2023); *NFPA v. UpCodes, Inc.*, 2021 WL 4913276, *7 (C.D. Cal. Aug. 9, 2021); *Int'l Code Council v. UpCodes, Inc.*, 2020 WL 2750636, *28 (S.D.N.Y. May 27, 2020); *see also Prac. Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 519 (9th Cir. 1997); *CCC Info. Servs. v. Maclean Hunter Mkt. Reps.*, 44 F.3d 61, 74 n.30 (2d Cir. 1994).

62. The "fair use of a copyrighted work … is not an infringement of copyright." 17 U.S.C. §107. This doctrine "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google v. Oracle*, 593 U.S. 1, 18 (2021). Four factors guide the fair-use inquiry. 17 U.S.C. §107. Taken together, they establish that PRA's public dissemination of *CPT* would be fair use.

63. *First*, "the purpose and character of the use"—"including whether such use is of a commercial nature or is for nonprofit educational purposes"—favors fair use. 17 U.S.C. §107(1).

   a. PRA is a nonprofit organization dedicated to transparency in healthcare that intends to post *CPT* online "for free," so its "use is for nonprofit, educational purposes." *ASTM II*, 82 F.4th at 1267. This aim "tips the scales in favor of fair use." *Google*, 593 U.S. at 32.

b. PRA's use also has "a purpose … different from the original," which further "weighs in favor of fair use." *Andy Warhol Found. for the Visual Arts v. Goldsmith*, 598 U.S. 508, 529 (2023). The AMA produces *CPT* to "enable physicians, providers, payers, regulators, vendors and health care technology organizations to document, communicate and understand the care provided to patients," and it licenses the *CPT* codes and descriptors to make money. AMA, *CPT* (last accessed Jul. 17, 2026) perma.cc/4JRF-94PA. By contrast, PRA's goal is not to sell a competing billing standard or profit from its use of *CPT* but to ensure—consistent with its mission—that the public is able to freely access and understand the billing classifications and procedures required by law. For purposes of fair use, this "distinction" in purpose between "producing standards" and "provid[ing] the public with … free" access to "the law" is "fundamental." *ASTM II*, 82 F.4th at 1268.

64. *Second*, "the nature of the copyrighted work," 17 U.S.C. §107(2), "weighs heavily in favor of fair use," *ASTM II*, 82 F.4th at 1268.

a. Works that serve a "utilitarian" rather than "artistic" function receive lesser copyright "protection." *Google*, 593 U.S. at 20. As a standard "incorporated into law," *CPT* falls "at best, at the outer edge of copyright's protective purposes." *ASTM II*, 82 F.4th at 1268.

b. *CPT* is even less like an ordinary private work than the typical incorporated standard. *CPT* is not merely a collection of best practices that happened to be incorporated into law after publication. To the contrary, CMS is contractually obligated to adopt *CPT* for Medicare and Medicaid, and HIPAA regulations give the AMA the authority to update federal law on a prospective, unilateral basis. *Supra* ¶57. A document maintained for the purpose of updating the federal regulations that govern electronic healthcare transactions has *de minimis* expressive or artistic value and can receive no more than the weakest copyright protection.

21

65.     *Third*, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. §107(3), also "strongly supports fair use," *ASTM II*, 82 F.4th at 1269. "[T]here is no per se rule against copying in the name of fair use an entire copyrighted work if necessary." *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). Here the federal government and many States have given "legal effect to [the] entire" *CPT*, so "its entire reproduction is reasonable in relation to the purpose of the copying, which is to provide the public" with "free" access to "the law." *ASTM II*, 82 F.4th at 1269.

66.     *Fourth*, "the effect of the use upon the potential market for or value of the copyrighted work," §107(4), supports fair use—or at least "does not significantly tip the balance one way or the other," *ASTM II*, 82 F.4th at 1272.

a.     Any monetary losses the AMA may suffer from PRA posting *CPT* online are not "cognizable under the Copyright Act." *Google*, 593 U.S. at 35. *CPT* is "valuable" only because state and federal law requires providers and payers to use it, not "because of its expressive qualities." *Id.* at 38-39. If tomorrow the federal and state governments required a completely different system of billing procedures, demand for *CPT* would collapse. Its value thus derives from its status as an authoritative statement of *the law*, not because of any inherent expressive or artistic values.

b.     Regardless, upon information and belief, the AMA currently receives vastly more in revenue from *CPT* than it costs to produce it.

c.     Even if PRA's proposed publication caused AMA to lose revenue, "self-interest" would continue to incentivize AMA to contribute to *CPT*. *Veeck*, 293 F.3d at 806. "[I]t is difficult to imagine an area of creative endeavor in which the copyright incentive is needed less" than the production of model standards. *Id.* "Trade organizations have powerful reasons stemming from industry standardization, quality control, and self-regulation to produce these

model codes; it is unlikely that, without copyright, they will cease producing them." *Id.* That is especially true here, because *CPT* defines the process for how physicians—the AMA's members—*get paid*. It is self-evident that medical providers and their industry associations have ample incentive to develop guidelines that will help them get paid more efficiently.

d.       The federal government and the States rely heavily on *CPT*, making its use mandatory for Medicare, Medicaid, electronic billing, and a variety of other purposes. If the AMA ever lacked the financial means to continue producing *CPT*, these governments would have a strong incentive to step in and financially support its continued production.

e.       The fourth fair use factor also requires "tak[ing] into account the public benefits the copying will likely produce." *Google*, 593 U.S. at 35. Here, "the substantial public benefits of free and easy access to the law" outweigh any cognizable harm the AMA is likely to suffer from PRA's proposed use. *ASTM II*, 82 F.4th at 1271.

f.       At minimum, the fourth fair use factor cannot overcome the weight of "the first three factors," which "strongly favor fair use." *Id.* at 1272.

67.       If any doubt remains, constitutional avoidance requires a finding of fair use, *ASTM I*, 896 F.3d at 447, particularly because the fair-use defense is meant to safeguard "First Amendment values," *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 555 (1985). The public cannot be denied open access to *CPT*, which is pervasively incorporated into federal and state law.

## COUNT III
### Copyright Misuse

68.       Finally, the doctrine of copyright misuse forecloses the AMA from enforcing its copyright against PRA. Copyright misuse is a defense against infringement. *See Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 976 (4th Cir. 1990). Here, the AMA's license agreement with CMS constitutes copyright misuse from which the AMA has not purged itself.

23

69.     In *Practice Management*, the Ninth Circuit held that "the AMA misused its copyright by licensing the CPT to HCFA in exchange for HCFA's agreement not to use a competing coding system." 121 F.3d at 520; *see* 1983 License Agreement §1 ("HCFA agrees not to use any other system of procedure nomenclature in HCPCS for reporting physicians' services."). Under this holding, the AMA's copyright is not enforceable until the AMA "has purged itself of the misuse." *Lasercomb*, 911 F.2d at 979 n.22; *see Prac. Mgmt.*, 121 F.3d at 520 n.9. This requires the AMA to show that "the improper practice has been abandoned and that the consequences of the misuse of the [copyright] have been dissipated." *Morton Salt Co. v. G. S. Suppiger Co.*, 314 U.S. 488, 493 (1942).

70.     The AMA attempted to purge this misuse by "renounc[ing] its rights under the exclusivity clause." *See* Brief for U.S. 5 n.6, *Prac. Mgmt.*, 524 U.S. 952 (No. 97-1254). But this attempted purge was insufficient for at least two reasons:

a.     Even without the exclusivity provision, on information and belief the license agreement still effectively "requires [CMS] to use the AMA's copyrighted coding system and prohibits [CMS] from using any other." *Prac. Mgmt.*, 121 F.3d at 520. Apart from the exclusivity provision, the 1983 License Agreement required that "HCFA shall adopt and use CPT-4 in connection with HCPCS." §1. On information and belief, this provision remains in effect today. *See Medicare Claims Processing Manual* ch. 23, §20.1 ("CMS shall adopt and use CPT-4 in connection with HCPCS for the purpose of reporting services under Medicare and Medicaid."). Since *CPT* is a comprehensive system for coding medical procedures that CMS is *required* to adopt, CMS is not free to adopt any other system of codes for Medicare and Medicaid reimbursement.

b.     Even if CMS is free to use any system of codes today, "the consequences" of the AMA's prior misuse have not "dissipated." *Morton Salt*, 314 U.S. at 493. The AMA used the exclusivity provision to become the required system of codes for Medicare and Medicaid.

24

When it renounced the exclusivity provision, the AMA did not lose the advantage of being the existing required system. That ill-gained advantage "cannot be readily purged by a change in contract provisions because of sunk-cost investments made by physicians and others in using the AMA standard to comply with HCFA regulations." Pamela Samuelson, *Questioning Copyrights in Standards*, 48 B.C. L. Rev. 193, 200 n.43 (2007).

**PRAYER FOR RELIEF**

This Court should enter judgment in Plaintiff's favor and against Defendant and provide the following relief:

A.  A declaration that PRA's proposed use of *CPT* is not copyright infringement.

B.  A declaration that the AMA's asserted copyrights in *CPT* are invalid.

C.  A declaration that PRA's proposed use of *CPT* is fair use.

D.  A declaration that the AMA's asserted copyrights in *CPT* are unenforceable due to copyright misuse.

E.  Any other further equitable relief needed based on PRA's declaratory judgment or decree.

F.  Reasonable costs and expenses of this action, including attorneys' fees.

G.  All other relief to which PRA is entitled.

Dated: August 13, 2026

Respectfully submitted,

  */s/ Cameron T. Norris*
Jeffrey M. Harris*
Cameron T. Norris
Ryan M. Proctor*
Nicholas B. Venable*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*\*pro hac vice forthcoming*

*Counsel for Plaintiff*

25